(No. 4673— ▮▮▮▮▮▮▮▮▮▮

HYRE ELECTRIC COMPANY, AN ILLINOIS CORPORATION, Claimant, vs. STATE OF ILLINOIS, Respondent.

Opinion filed May 14, 1957.

SCOLNIK AND LAFFERTY, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; RICHARD F. SIMAN, Assistant Attorney General, for Respondent.

Tolson, C. J.

On April 4, 1955, Hyre Electric Company, A Corporation, filed its complaint seeking payment for work performed at the Illinois State Penitentiary at Pontiac, Illinois.

The record consist of the complaint, additional complaint, Departmental Report, stipulation and order waiving brief, transcript of evidence and exhibits.

The facts of the case are as follows:

In 1947, plans were developed to change over the electrical system at the Pontiac Penitentiary from direct current to alternating current. This conversion necessitated a complete change over of all motors and other electrical equipment. Hyre Electric Company was awarded the job under two contracts identified as Nos. 66281 and 66283. In March of 1950, claimant purchased the necessary equipment and supplies, moved onto the site, and agreed to complete the job in 180 days.

Respondent stopped the job, and completely revised the plans. Thereafter a contract was let for the construction of a tunnel, and claimant was unable to proceed with its work until the tunnel was finished. The new plans called for extra work not contemplated in the original bid, and, of much more significance, labor and material costs had increased at a very substantial rate.

The Departmental Report acknowledges the responsibility of the state for the delay, and further that all extra work was ordered and accepted, and that claimant was entitled to payment therefor.

At the hearing, hundreds of exhibits were introduced in evidence to support the veracity of the claim, and the Attorney General not only did not offer evidence to the contrary, but advised the Court that there was no meritorious defense.

On May 10, 1957, Commissioner Herbert G. Immenhausen filed his report finding all issues in favor of claimant. His report in the following words and figures is hereby adopted by the Court:

### "Commissioner's Report

Hyre Electric Company, An Illinois Corporation, by its attorneys, Berger and Newmark, filed its claim against the State of Illinois on April 4, 1955. On June 6, 1956, they filed an additional claim, described as Count Two, which was allowed by order of the Court. On February 21, 1957, Berger and Newmark withdrew as attorneys for claimant, and Scolnik and Lafferty were substituted with the consent of the Vice-President of Hyre Electric Company, H. M. Cavanaugh.

Claimant alleges that its claim arises upon the contracts between it and the State of Illinois to furnish all labor and material to fully complete all the work for an electrical distribution system at the Illinois State Penitentiary, Pontiac Branch, Pontiac, Illinois. The contracts are known as Nos. 66281 and 66283, and were entered into on February 21, 1950.

Claimant also makes a claim for extra work, and the cost of delays at the instance and request of the State of Illinois. Claimant also makes the claim that it was prevented from beginning its work on schedule, because other and different work was done, for which it was not responsible.

The subject matter of the claims under the original complaint and Count Two was presented to the Division of Architecture and Engineering, Department of Public Works and Buildings, State of Illinois, J. N. Gaunt, Chief of Construction, on or about February 10, 1954. Claimant was advised that the funds appropriated to cover the cost for this project were not re-appropriated, and that these funds lapsed on September 30, 1953.

Demand for payment was made, and claimant was informed that there was no other recourse except to file suit in the Court of Claims. Claimant is the sole owner of these claims, and there is no assignment or transfer of the claims, or any part thereof.

Under contract No. 66281 claimant was to furnish all labor and material to fully complete all the work for an electrical disribution system for the Illinois State Penitentiary, Pontiac Branch, Pontiac, Illinois.

Contract No. 66283 called for claimant to fully complete all the work called for in Proposal No. 1 for complete electrical conversion from direct to alternating current, and electrical wiring for power and light at the Illinois State Penitentiary, Pontiac Branch, Pontiac, Illinois.

Claimant called as an adverse witness for cross-examination under the appropriate section of the Civil Practice Act, J. N. Gaunt, Chief of Construction of the Division of Architecture and Engineering, Department of Public Works and Buildings, State of Illinois. In addition to testifying under cross-examination as an adverse witness, the said J. N. Gaunt produced the files of the Department of Public Works and Buildings affecting the contracts described above and the work covered by correspondence, memoranda and reports of inspection and field conditions as they arose in the progress of the work. There is also on file in this case, duly filed with the Clerk of the Court of Claims on March 4, 1957, a communication from the supervising architect to the Hon. Latham Castle, Attorney General of the State of Illinois, Subject: Departmental Report, Hyre Electric Company, An Illinois Corporation vs. State of Illinois, Court of Claims, No. 4673, from which your Commissioner quotes as follows:

'Count One.

Paragraph 1—This contract between claimant and the State of Illinois was entered into under date of February 21, 1950, and involves two contracts, namely, Nos. 66281 and 66283, both having the same date.

Paragraph 2—Throughout the course of the job, in our opinion, certain extra work was contracted for by virtue of verbal authorization from our Mr. Fagen, who is no longer with this Division, by our associate architects, our former Building Construction Supervisor, Mr. Walter Wehrwein, who is no longer living, and a representative of the management of the Illinois State Penitentiary, Pontiac Branch, Pontiac, Illinois.

We are submitting to you our complete files showing numerous cases and copies of letters, results of conferences, meetings, etc., by and between the aforementioned people, none of whom are available at this date, so that we may secure a true picture of the allegations, which the Hyre Electric Company seems able to substantiate in its Counts One and Two in connection with these two projects.

Assuming that the claims are true and just, we have no method of disputing same. Further, we are of the opinion that it is impossible to furnish satisfactory defenses to this action.'

The evidence shows that contract No. 66281 was in the amount of $116,970.00, and that, at the time of the hearing, and since, there is still a balance unpaid on this contract of $3,000.00, but that all of the work, which was required to be done under the contract, was 100% completed and accepted.

Under the original claim, claimant proved that there was extra work done in connection with this contract, as follows:

A.  As summarized in the complaint, paragraph 4, items A through N, both inclusive, in the amount of $8,695.00.

B.  There were certain materials bought, acquired and paid for by claimant in advance of the actual work progress, but, due to changes by the Department, these materials were not used, and it was shown in the evidence

that claimant was unable to use them otherwise, or to dispose of them. The amount proved as to this item was $2,802.48.

C. Claimant made proof of items of increased cost of materials due to the delay in permitting claimant to proceed with performance under contract. This claim is represented by the difference between the quoted prices on or about the time of the date of the contract and the actual purchase prices at the time claimant was permitted to proceed. These items generally covered wiring cables, junction boxes and fittings, fiber ducts, concrete delivered to the site, reinforcing steel, form number and equipment rental, totaling $12,411.26.

D. The claim also included the difference in cost of labor as of the time of the entering into the contract and the period during which performance was allowed, or permitted, or possible (which was from 18 months to 2 years later), which amounted to $11,329.95.

E. The increased job cost of supervision on the site came to $20,251.38.

This makes a grand total of additional costs of $55,490.07. In addition claim was made for overhead of 15%, which amounted to $8,323.51, and profit of 10%, or $6,381.35, and bond costs of 1% amounting to $701.94, making a total of all the extras and claims for additional costs, labor and job supervision of $70,896.87, which, plus the $3,000.00 due and unpaid on the original contract, makes a grand total of $73,896.87 under this claim of the complaint.

Under Count Two of the complaint, the evidence shows that the amount of contract No. 66283 was $62,745.00. All of the contract price was paid except, and there is still due thereon, a balance of $150.00, and it was shown that all of the work required by said contract was done and accepted. The evidence shows that there was extra work done in connection with this contract, which arose through field conditions and changes in situation entirely different from those anticipated at the time of the drawing of the plans (1947), and the time at which the work was done (1952-1953). This additional work, as called for by representatives of the Department and the associated architects, who were in the field and on the site, is supported by letters, vouchers and minutes of meeting, summarized as follows:

Additional work as agreed on September 26, 1952, $11,387.00, and the reworking of West Cell House panels for the agreed price of $431.00. Because of the delay (about 2 years), the per hour for labor increased from $1.87½ per hour to $3.12 per hour. The total hours involved was 6,660. The difference involved was $1.65 per hour, and the additional cost to claimant was $10,989.00. The insurance on the additional hours was 12.4% and amounted to $1,362.63.

As a part of the claim in Count Two, certain motors were purchased and delivered to the site at the time the contract was entered into, but it was impossible to put them into operation within a reasonable time after they were purchased and delivered to the site, and because of the 2½ years delay these motors had to be re-worked, which involved 235 hours at the then rate of $3.20 an hour, making a total for this item of $725.00. The insur-

ance on this item was 12.4% amounting to $89.90, the 15% overhead amounted to $1,974.98, and profit at 10% amounted to $1,514.15, and the bond premium of 1% amounted to $284.73. The total of all of these items for extras and costs of delay amount to $28,758.39, which amount, plus the $150.00, which is due on the balance of the contract, makes a grand total under Count Two of $28,908.39.

The total under both Counts amounts to $102,805.26.

The trial was commenced on April 10, 1957 by your Commissioner in Room 827, 160 North LaSalle Street, Chicago, Illinois. Respondent filed a Departmental Report, which was already in the record, as it had been filed with the Court of Claims on March 4, 1957. Respondent did not file an answer to the complaint, and under the rules a traverse or denial is considered to have been filed.

After a careful consideration of all the evidence, and having had the opportunity to observe the witnesses on the stand, their demeanor while on the witness stand, and having examined all of the exhibits, Nos. 1 to 43, and the testimony of the witness, J. N. Gaunt, who stated he inspected the work, and that the work was satisfactory in accordance with contracts, and all additional work was agreed upon by the Department heads; and that the state was at fault in not permitting claimant to do its work on time; as well as that of the witness for claimant, Ernest H. Meyer, who produced a time sheet and records of materials on behalf of claimant; and on listening to arguments of counsel, it is my opinion that claimant has proven its case by a preponderance of the evidence, and, in accordance with the Departmental Report, respondent admitted that the work was done, and that claimant was entitled to be paid, but they were not paid because the appropriation had lapsed on September 30, 1953.

It is my opinion, therefore, that claimant should be allowed the sum of $102,805.26, and I, therefore, recommend that the payment be made and approved by the Honorable Judges of the Court of Claims.

*Respectfully submitted,*

Herbert G. Immenhausen,
*Commissioner.*"

An award is, therefore, made to claimant in the amount of $73,896.87 under Count I, and a further award of $28,908.39 under Count II, or a total amount of $102,805.26.